IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THOMAS J. RICHARDSON,<br><br>              Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>              Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09-cv-851 BCW<br><br>Magistrate Judge Brooke Wells |

This matter is before the Court on Plaintiff, Thomas J. Richardson's Complaint filed on September 22, 2009. Mr. Richardson seeks review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration, denying Mr. Richardson's claim for Social Security Childhood Disability Benefits under Title II of the Social Security Act, 42 U.S.C. § 402(d)(1). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). As set forth below, the Court affirms the decision of the Commissioner.

## BACKGROUND

Plaintiff, Thomas Richardson, is an approximately 37 year old male with learning disabilities, Asperger's disorder[1] and autism. Mr. Richardson filed applications for Childhood Disability Benefits and Social Security Income (SSI) under Title II and Title XVI of the Social

---

[1] Asperger's disorder is a continuous lifelong disorder that may act differently at different ages. In childhood, individuals with this disorder do not have clinically significant delays in cognitive development or in age-appropriate self-help skills, adaptive behavior (other than in social interaction), and curiosity about the environment. Often, the social disability of individuals with the disorder becomes more striking over time. By adolescence, some individuals may learn to use areas of strength to compensate for areas of weakness. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) Section 299.80 Asperger's Disorder, 80-84 (4th Ed. Text Revision 2000).

Security Act, respectively, on November 22, 2006. Transcript (Tr.) 100-106. Title II of the Social Security Act provides benefits to an adult child of an individual who is entitled to old-age or disability insurance benefits or who dies a fully or currently insured person. *See* 42 U.S.C. § 402(d)(1). An individual over the age of 18 is entitled to childhood disability benefits on the earnings record of an eligible insured person if the individual: (1) applies for childhood disability benefits; (2) is the child of the insured person; (3) was dependent upon the insured person; (4) is not married; and (5) is under a disability (as defined by the Act) which began before he became 22 years of age. *See id.*; 20 CFR § 404.350.

Mr. Richardson asserts that he has been disabled since at least December 31, 1994 due to a developmental disability. This alleged disability date – December 31, 1994 – is prior to Mr. Richardson turning 22 years old. Tr. 118, 123. A hearing was held before Administrative Law Judge ("ALJ") William Musseman on September 22, 2008. Tr. 67-82. Mr. Richardson was 35 as of the date of hearing, and had no prior work experience. The ALJ found he had not engaged in substantial gainful activity at any time since birth. Tr. 14.

By decision dated December 16, 2008, the ALJ found that as of November 22, 2006, the severity of Mr. Richardson's developmental disorder, Aspergers Syndrome, and autism, met the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.10. Tr. 17 - 18. Mr. Richardson was awarded SSI benefits.

With respect to the period prior to November 22, 2206, the ALJ stated that:

[t]here is no evidence in this case which is instructive as to the claimant's condition before age 22. While the undersigned finds he had a history of developmental delay, the complete lack of evidence before early 2007 does not permit a conclusion that the claimant had impairments of the current severity during an earlier time frame. Tr. 16

The ALJ found that prior to November 22, 2006, it was reasonable to conclude that claimant had a developmental delay which was a severe impairment that limited claimant to performing only simple, repetitive tasks. The ALJ found these limitations had "little to no effect" on the ability to perform unskilled work at all exertion levels. Tr. 17. The ALJ then denied Mr. Richardson's claim for Child Disability Benefits under the Social Security Act. Tr. 18.

**ANALYSIS**

**I. Standard of Review**

"The standard of review that governs decisions in disability-benefit cases is deferential." *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence in the record as a whole. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court must carefully examine the record, but it may not re-weigh the evidence or substitute its discretion for that of the Commissioner. *Flaherty*, 515 F.3d at 1070. Thus, even though the Court conducts a critical review of the evidence, the Court will uphold a decision as long as the evidence supports it and the ALJ explains her analysis with "enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). But, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## II. Analysis[2]

In a child benefit case, such as the instant matter, the claimant bears the burden of proving that they are disabled before the age of 22. *See* 20 C.F.R. § 404.350(a)(5); 42 U.S.C. § 402 (d)(1)(B)(ii); *Younger ex rel. Younger v. Shalala*, 30 F.3d 1265, 1269 (10th Cir. 1994). A claimant must produce medical evidence that supports their claims of disability. And, it is the claimant that "bears the risk of uncertainty, even if the reason for the sparse record is simply a long lapse of time." *Eichstadt*, 534 F.3d at 668. Where, as here, a claimant appears before the ALJ with counsel, the ALJ does not have a "heightened duty to investigate all issues presented, and to develop the record as to those issues." *Id.* at 1267.

On appeal, claimant raises three primary arguments: 1) the ALJ failed to properly consider the opinion evidence submitted by claimant in violation of SSR 06-03; 2) The ALJ should have sought the assistance of a medical advisor for help in determining claimant's date of onset of disability as indicated under SSR 83-20; and 3) the ALJ erred at steps four and five of the sequential evaluation process because the Residual Functional Capacity (RFC) determination prior to claimant's attaining age 22 is not supported by substantial evidence in the record, and the ALJ improperly applied the Medical-Vocational Guidelines (grids) to find claimant can perform substantial numbers of jobs in the regional or national economy. A careful review of the record undermines claimant's arguments.

### (a) The ALJ failed to properly consider the opinion evidence

---

[2] In determining whether or not a claimant is disabled, the Commissioner must follow the familiar five-step sequential evaluation process in disability cases. *See* 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

4

In support of his argument that the ALJ failed to properly consider opinion evidence, claimant points to a part of the ALJ's decision where the ALJ states: "there is no evidence in this case which is instructive as to the claimant's condition before age 22." Tr. 16. Based upon the record, however, it appears this statement refers to medical evidence and not opinion or lay evidence. The ALJ's decision and transcript of the hearing held before the ALJ support this interpretation. The ALJ considered testimony from claimant, and his brother and sister-in-law with whom he now lives. In his decision, the ALJ specifically noted the fact that claimant's brother "was unaware of any odd behavior or slow development when he was a small child." Tr. 15. And, during the hearing, the ALJ noted that he received a letter from claimant's former special education teacher Ms. Suttlemyre. Tr. 41. The ALJ compared Ms. Suttlemeyer's experiences with claimant to those of the consultative examiner, Dr. Carlisle, and found them to be similar. Tr. 41, 170-73. While claimant may be unhappy with the weight the ALJ gave this opinion evidence, it is not this Court's function to reweigh such evidence. Based upon the Court's review of the record, the Court finds the ALJ properly considered the opinion evidence.

### (b) The ALJ should have sought the assistance of a medical advisor for help in determining claimant's date of onset of disability as indicated under SSR 83-20

According to SSR 83-20, the relevant factors the ALJ should consider in determining the onset date of disability include the claimant's allegations, the claimant's work history, if any, and the medical and other evidence concerning impairment severity. *See* SSR 83-20, 1983 WL 31249 at *1-2. SSR 83-20 makes it clear that medical evidence is the primary factor in the determination of disability onset. *Id.* This regulation also gives guidance as to those cases where precise evidence is not available. SSR 83-20 states:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped

working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. <u>This judgment, however, must have a legitimate medical basis.</u> *Id.* (emphasis added).

Consistent with SSR 83-20, the ALJ considered Plaintiff's alleged disability onset date and his work history. In finding Plaintiff's mental impairment severe, the ALJ acknowledged that Plaintiff had a developmental disorder, and it was reasonable to conclude that the disorder existed prior to age 22. However, as the ALJ noted, the record did not strongly indicate that Plaintiff's impairment had always been disabling. (Tr. 16). For example, claimant "made average grades – such as Cs in high school – although it was reportedly in special education." (Tr. 16). The ALJ also noted the lack of medical evidence in the record supporting claimant's position.

There is a lapse in this case of approximately 12 years from the date that Plaintiff turned 22 (January 1995) to the date of Dr. Carlisle's medical examination in the record (February 2007). Dr. Carlisle diagnosed claimant with Asperger's disorder in 2007 and opined that claimant was currently disabled. But, he did not suggest that claimant's impairment was disabling prior to age 22. (Tr. 170-73). The other medical opinion in the record, Dr. Hedges, concluded that even as of 2007 when claimant was 34, that his Asperger's disorder was not disabling because it did not preclude him from performing simple, low-stress, repetitive tasks. (Tr. 193-94). Faced with this conflicting evidence, the ALJ rejected Dr. Hedges' opinion relating to claimant's condition as to November 2006.

Plaintiff suggests that the ALJ erred by not consulting a medical examiner to help with the lack of medical evidence in the record and to establish a date for onset of disability. The Court disagrees. SSR 83-20 requires a "legitimate medical basis" for any decision regarding when an impairment becomes "disabling" under the Act. It is difficult to see how any medical

6

examiner could have provided an opinion, grounded in the requisite "legitimate medical basis" that claimant's now-diagnosed Asperger's or autism disorders, rendered him disabled before the age of 22. It is the claimant who bears the burden of producing medical evidence that supports his claims of disability. Forcing this burden upon the Commissioner, as Plaintiff suggests, is inappropriate in this case.

The Court finds the ALJ did not err in following SSR83-20. The Court is not persuaded that the lack of medical evidence in the record would somehow be remedied if a medical advisor was called into the case.[3]

**(c) The ALJ Erred at Steps Four and Five of the Sequential Evaluation Process**

The ALJ found that prior to November 22, 2006, Mr. Richardson had the RFC to perform a full range of work at all exertional levels if such work was limited to only simple repetitive tasks. (Tr. 15-16). The ALJ then applied the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appx. 2, to find claimant was not disabled prior to November 22, 2006. In support of this finding the ALJ cited the testimony of claimant's brother John Richardson, the report from a consulting psychologist Dr. Carlisle, who examined Plaintiff in February 2007, and the lack of medical evidence in the record supporting claimant's assertion that he was disabled.

Claimant argues that the ALJ should have elicited testimony from a vocational expert rather than relying on the grids. The grids are tables prepared by the Secretary which evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with his work capability. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991). The grids "help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and

---

[3] While not cited to by the ALJ, the Court notes that the definition of Asperger's disorder found in the widely accepted American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders also supports the ALJ's decision. The DSM provides that Asperger's disorder may vary at different ages and specifically notes that there may be differences in childhood from adulthood. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) Section 299.80 Asperger's Disorder, 80-84.

7

physical limitations." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991). "'[T]he grids are a shortcut that eliminate the need for calling in vocational experts.'" *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir.1988) (quoting *Hurt v. Secretary*, 816 F.2d 1141, 1142-43 (6th Cir.1987)). The grids set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987).

Here, the ALJ recognized that claimant had additional nonexertional limitations and therefore referred to the grids only as a framework. (Tr. 17). He concluded that claimant's nonexertional limitation—the ability to perform only simple, repetitive tasks—had little effect on the occupational base of unskilled work at all exertional levels. (Tr. 17). 20 C.F.R. § 404.1568(a) defines "unskilled work" as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. A person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are need. *Id*. SSR 85-15 further provides that unskilled work includes the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. SSR 85-15, 1985 WL 56857, *4 (1985).

In contrast to *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), which is cited to by Plaintiff in support of his argument, the claimant in *Hackett* had many more limitations than those found in the record here. Further, the record indicates that the ALJ weighed the evidence in applying the grids. Although there is some support for claimant's position, the Court cannot say the record does not support the ALJ's conclusion. And on appeal, the Court cannot interpose its judgment for that of the ALJ. *Trimiar v. Sullivan*, 966 F.3d 1326, 1332 (10th Cir. 1992).

In sum, the Court finds this case analogous to *Younger v. Shalala*, 30 F.3d 1265 (10th Cir. 1994). In *Younger* the 10th Circuit stated:

> Our careful study of the record leads us to conclude that the ALJ met his duty to develop the record in this case. The ALJ questioned plaintiff extensively about her relationship with the wage earner and about the possibility of any documentation of paternity. Beyond the duty to develop the record as to issues, factual matters, and avenues raised by a claimant, an ALJ need not make out a claimant's case where, as here, claimants bear the burden of demonstrating entitlement to benefits. Although the result is unfortunate for claimants, the court finds that the judgment of the United States District Court for the Northern District of Oklahoma must be AFFIRMED.

Here, the ALJ questioned plaintiff and his family about his situation. The ALJ properly developed the record and claimant failed to meet his burden in demonstrating entitlement to benefits. Taken as a whole, the Court finds there is substantial evidence in the record to support the ALJ's decision and that it is free from legal error.

## CONCLUSION

As set forth above, in applying the relevant standard of review, the Court denies claimant's appeal. The decision of the ALJ is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58 and consistent with the Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 14 March 2011.

Brooke C. Wells
United States Magistrate Judge